UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DEAN,

                Plaintiff,                             Civil Action No. 10-14135

         v.                                   District Judge Robert H. Cleland
                                               Magistrate Judge Laurie J. Michelson

PRISON HEALTH SERVICES, et al.,

                Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [13, 18]**

      Plaintiff Michael L. Dean, a prisoner proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that Prison Health Services, Inc., certain employees of the Michigan Department of Corrections ("MDOC"), and other individuals whose involvement are unknown, violated his Eighth Amendment rights by acting with deliberate indifference to his need for Hepatitis C treatment. Presently before the Court are Defendants Debra Scutt, Michelle Creger, Joyce Hunter, and Larry McMillan's Motion for Summary Judgment (Dkt. 13, Defs.' Mot. Summ. J.), and Defendant Laura Kinder's Motion for Summary Judgment (Dkt. 18, Kinder's Mot. Summ. J.).

      For the following reasons, I RECOMMEND that the Court GRANT Defendants' motions and DISMISS this case WITHOUT PREJUDICE.

**I. BACKGROUND**

      **A. Facts**

      In June 2005, while incarcerated in Jackson County, Michigan, Plaintiff tested positive for the Hepatitis C virus ("HCV"). (Dkt. 1, Compl. at 1.) Hepatitis is inflamation of the liver, and, over time, this inflamation can lead to liver scarring (i.e., cirrhosis) or liver cancer. (Dkt. 16, Pl.'s Resp.

to Def.'s Mot. Summ. J. at 23, MDOC HCV Management Plan (effective July 1, 2008).)  Although there is no vaccine for the HCV, it may be treated through a lengthy (24 to 48 week) course of interferon treatments.  *See* United States Department of Veterans Affairs, *Hepatitis C Treatment Decisions* (Feb. 25, 2010), http://www.hepatitis.va.gov/.

Through the remainder of 2005 and into 2006, Plaintiff had periodic laboratory work performed by MDOC's Viral Hepatitis Chronic Care Clinic ("Care Clinic").[1]  In September 2006, a liver biopsy was performed to determine Plaintiff's HCV genotype; the biopsy revealed that Plaintiff's was "1b."[2]  As of June 2007, it appears that Plaintiff was not receiving interferon treatments from the Care Clinic; instead, he was scheduled to return for a followup visit in six months.  (*See* Pl.'s Resp. at 25.)

Although the record is sparse on this issue, it appears that Plaintiff was released from prison sometime after June 2007 but was then reincarcerated for methamphetamine possession on December 3, 2009.  *See* Michigan Department of Corrections, *Offender Tracking Information System*, http://www.state.mi.us/mdoc/asp/otis2.html (stating that Plaintiff committed a methamphetamine possession offense on March 27, 2009, and that on November 30, 2009, Plaintiff was sentenced); (Pl.'s Resp. at 20).

On April 10, 2010, MDOC transferred Plaintiff from an unspecified corrections facility to his present location, the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. (Pl.'s

---

[1]The record reflects that Plaintiff had lab work performed in October 2005; March, May, October, and November 2006; and January 2007.  (Pl.'s Resp. at 22, 24-28.)

[2]There are six known genotypes for HCV and "[s]ome of them respond to treatment better than others.  For genotype 1, the virus generally is removed in 30-50% of patients."  United States Department of Veterans Affairs, *Hepatitis C Treatment Decisions* (Feb. 25, 2010), http://www.hepatitis.va.gov/.

Resp. at 20.)  Soon thereafter, in early May 2010, Plaintiff made the first of several requests to see

a doctor regarding his HCV.  (*See* Pl.'s Resp. at 13.)  Plaintiff saw a liver specialist in September

2010, and started interferon treatment in November 2010.  (Pl.'s Resp. at 16, 20, 30; *see also*

Dkt. 11, Pl.'s Mot. for Counsel (mentioning once-a-week interferon treatments).)  Plaintiff initiated

three grievances that relate to Defendants' allegedly dilatory response to Plaintiff's requests for

medical treatment, which Plaintiff asserts allowed his HCV "to progress to cirrhosis and cancer."

(Compl. at 2.)

### 1. Grievance Number JCF 10-06-01466-12D1

On June 1, 2010, Plaintiff filed grievance JCF 10-06-01466-12D1 ("JCF 1466") alleging that

"doctors and medical staff" continued to deny Plaintiff proper care.  (Pl.'s Resp. at 13.)  Plaintiff

grieved that on May 4, 2010, he was told that a doctor's appointment for his HCV would be

scheduled, but as of June 1, there was "still no call out for [a] doctor."  (*Id.*)  Plaintiff's Step I

grievance further provides,

> I am very sick due to my [HCV] and my body is swelling up and my
> feet are starting to crack open.[3]  I have very hard times wearing shoes
> because my feet are so wide as well as swollen.  I have a severe back
> prob[lem] and the doctors or medical staff continue to refuse me
> proper care.

(*Id.*)

On June 7, 2010, Defendant Michelle Creger, RN, responded to the JCF 1466 grievance by

scheduling an appointment with a "Medical Provider" for June 10, 2010.  (Pl.'s Resp. at 14.)

Defendant Joyce Hunter, RN reviewed the Step I response.  (*Id.*)

---

[3]Body swelling may be a symptom of cirrhosis.  *See* United States Department of Veterans
Affairs,  *Cirrhosis*,  http://www.hepatitis.va.gov/patient/complications/cirrhosis-ascites.asp  (last
checked March 13, 2011).

On June 10, 2010, in accordance with the Step I response, Plaintiff saw a physician assistant ("PA").[4] Dissatisfied with this appointment, Plaintiff filed a Step II appeal asserting that a physician assistant "can't meet my health needs," and grieving that he would not see a doctor "for another month." (Pl.'s Resp. at 17.)

Well after this suit commenced, on November 18, 2010, Plaintiff received a response to his Step II appeal. Regarding Plaintiff's HCV, the response provides that "Grievant had liver biopsy 10-17-06 which showed grade 2, stage 3 fibrosis. 407 generated at previously [sic] facility on 3-18-10 for ID evaluation yet to be processed. JCF Coordinator submitted request to administration." (Pl.'s Resp. at 18.) Deciphering, it appears that Plaintiff's prior incarcerating facility made a request for a specialist to evaluate Plaintiff's HCV condition in March 2010, and JCF resubmitted this request for approval sometime after Plaintiff's June 10 visit with the physician assistant. (*See* Pl.s' Resp. at 18, 20.)

### 2. *Grievance Number JCF 10-07-01816-12D1*

On July 26, 2010, Plaintiff filed a second grievance, JCF 10-07-01816-12D1 ("JCF 1816"), regarding substantially the same issues grieved in JCF 1466: the lack of an appointment with a specialist regarding his HCV, and the failure to commence interferon treatment. (Pl.'s Resp. at 19.) This time, however, the grievance specifically named Defendant Jackson, PA, who allegedly twice told Plaintiff (on June 17 and July 19, 2010) that he would be scheduled to see a liver specialist. (*Id.*)

On July 29, 2010, Defendant Laura Kinder, RN, responded to the JCF 1816 grievance. (Pl.'s Resp. at 19-20.) Her response provided that the liver specialist request had originally been

---

[4]This PA is unidentified but it is likely one of the two physician assistants Plaintiff names as Defendants: Jackson or an "A. Neff." (Compl. at 7.)

4

submitted  by Plaintiff's prior corrections facility in March 2010, and that it had been resubmitted for approval.  (*Id.*)  The response further stated that Plaintiff "has [an] appointment with specialist in September."  (*Id.*)  As with the JCF 1466 grievance, Defendant Hunter reviewed the JCF 1816 Step I response.  (*Id.*)

Due to some delay in receiving the requisite Step II appeal forms (for reasons which will be discussed below) Plaintiff did not appeal the JCF 1816 Step I response until September 11, 2010. Despite the fact that Plaintiff's appointment with a liver specialist was set to take place in a few days, Plaintiff again complained that he had not yet seen a specialist for his HCV.  (Pl.'s Resp. at 15.)

On September 16, 2010, Plaintiff saw a liver specialist, non-party Dr. Hutchinson.  Although the parties have not produced medical records from Dr. Hutchinson, the November 19, 2010, Step II response to the JCF 1816 grievance provides some details regarding his proscribed course of treatment:

> the specialist is requesting an utlrasound of liver and spleen, pending approval of [Prison Health Services] at this time, due to [history] of [HCV] and some evidence of cirrhosis.  Specialist would like an ultrasound of the patient's liver and spleen before beginning therapy. . . .  The Step I issue of being seen by a Specialist was addressed—this issue is considered resolved, as the Specialist is working on a plan of care for the Grievant.

(*Id.*)  Plaintiff started interferon treatment in November 2010.  (*See* Pl.'s Resp. at 30.)

### 3. *Plaintiff's Grievance Against Defendant McMillan*

On July 15, 2010, Plaintiff completed a Step I grievance form asserting that Defendant McMillan failed to provide him with Step III grievance forms for two grievances: the JCF 1466 grievance discussed above, and grievance JCF 10-06-01475-001G ("JCF 1475"), which is unrelated to this litigation.[5]  (Compl. at 1, 13.)          Portions of the copy of the Step I form provided by Plaintiff are illegible.  It *appears* that Plaintiff grieved:

> On numerous occasion I wrote L. McMillan the Grievance Coordinator requesting step 3 grievance appeal form (1) JCF 2010-06-1466-12D1 (2) JCF 2010-06-1978-01G.
>
> This grievance complaint is being filed against JCF Grievance Coordinator L. McMillan for neglect in his responsibility and violation of my rights for [illegible] my grievance.  On 6-[illegible]-2010 I received my receipt for my step 2 grievance appeal.  I was inform that by 7-7-10 I would [illegible] response. [illegible] that before the deadline I wrote for a step #3 grievance appeal form, as of this [illegible] have not received a response yet, nor agreed to an extension of time, therefore I'm requesting appropriate action on my step 3 grievance.

(Compl. at 13.)  Unlike the other grievance forms produced by Plaintiff, this one does not indicate that it was ever received by anyone at JCF, and has no grievance number.  (*See id.*)  Further, nothing suggests that it was ever appealed to Step II (or III).

Two other documents suggest that McMillan failed to provide Step II grievance forms for the JCF 1816 grievance in a timely manner.  The first is a letter Plaintiff wrote to the warden of JCF, Defendant Debra Scutt, on August 17, 2010.  (Compl. at 10.)  That letter states that McMillan failed to provide a Step II grievance form for JCF 1816 despite two kites being sent to him.  (*Id.*)  Another

---

[5]The JCF 1475 grievance pertains to the alleged wrongful taking of a $5.00 co-pay for a medical call-out on an eye infection.  (*See* Defs.' Mot. Summ. J., Ex. B.)

kite to McMillan, dated September 4, 2010, again requested a Step II grievance form for the JCF 1816 grievance. (Compl. at 8.) As mentioned above, Plaintiff ultimately filed his Step II appeal for JCF 1816 on September 11, 2010.

### B. Procedural History

Plaintiff executed and filed his verified Complaint on October 1, and October 15, 2010, respectively. (Dkt. 1.) On November 23, 2010, the Court granted Plaintiff's application to proceed *in forma pauperis*. (Dkt. 7.) On January 12, 2011, Defendants Creger, Hunter, McMillan, and Scutt, the only Defendants that had been served at the time, filed a Motion for Summary Judgment. (Dkt. 13.) Plaintiff filed his Response on January 28, 2010. (Dkt. 14.) Defendant Kinder has since waived service of process, and on March 7, 2011, filed a Motion for Summary Judgment. (Dkt. 18, Kinder's Mot. Summ. J.) Plaintiff responded to that motion on March 23, 2011. (Dkt. 23, Pl.'s Resp. to Kinder's Mot. Summ. J.) Defendants Prison Health Services, Cohen, Jackson, and Neff waived service of process on March 24, 2011, (Dkts. 26-29) but have not yet answered or filed any dispositive motions. Defendants Stevenson, and Jane and John Doe remain unserved.

## II. ANALYSIS

### A. Legal Standards

#### 1. *Summary Judgment Pursuant to Rule 56*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the

7

light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## 2.  *Exhaustion Under the Prisoner Litigation Reform Act*

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  More specifically, the Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  The exhaustion requirement is justified on two grounds.   First, it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002).  Additionally, the requirement "has the potential to reduce the number of

inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life—regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, the prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself. " *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'").

### 3. *MDOC's Policy Directive 03.02.130*

MDOC Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive") sets forth the procedures that govern the grievances filed by Plaintiff. (Def.'s Mot. Summ. J., Ex. A.) The Policy Directive provides that prior to filing a grievance, an inmate must attempt to resolve the problem orally with the person-to-be-grieved "within two business days after becoming aware of a grievable issue." (*Id.* ¶ P.) If this attempt at resolution fails, the inmate then has five business days to file a Step I grievance form. (*Id.*) In completing grievance forms, "[t]he issues shall be stated briefly but concisely. Information provided shall be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." (*Id.* ¶ R.) The inmate submits the completed

9

2:10-cv-14135-RHC-LJM   Doc # 30   Filed 03/28/11   Pg 10 of 21   Pg ID 213

Step I form to "the Step I Grievance Coordinator designated for the facility," who then assigns it to a respondent.  (*Id.* ¶¶ V, X.)

If the inmate is dissatisfied with the Step I response, he may appeal by requesting a Step II appeal form from the Step I Grievance Coordinator.  (*Id.* ¶¶ BB.)  The prisoner must then send a completed Step II grievance form to the Step II Grievance Coordinator within ten business days of the Step I response, or, if the Step I response was untimely (the respondent has 15 days from receipt of a Step I grievance absent an extension), within ten days of the response deadline.  (*Id.*)  The respondent at Step II varies; for grievances regarding health care issues the respondent is "the Regional Health Administrator or designee."  (*Id.* ¶¶ DD.)

If the prisoner remains dissatisfied, he may appeal his grievance to Step III.  (*Id.* ¶ FF.)  To do so, he must send a completed Step III form to the Grievance and Appeals Section, located in Lansing, Michigan, within ten business days of receiving the Step II response, or if the Step II response is not timely, within ten business days after the Step II response deadline.  (*Id.* ¶¶ N, FF, GG.)  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II."  (*Id.* ¶ S.)

**B.  Plaintiff's Grievances are Unexhausted**

*1.  Grievance Number JCF 10-06-01466-12D1 is Unexhausted*

In support of their motions for summary judgment, Defendants offer the affidavit of Richard Stapleton, MDOC's Administrator for the Office of Legal Affairs. (Defs.' Mot. Summ. J., Ex. A, Stapleton Aff.)  Stapleton avers that the  Grievance and Appeals Section uses the following process to track Step III grievances:

10

> When a Step III grievance is received in the [Grievance and Appeals Section of the Office of Legal Affairs] it is date-stamped by clerical staff who audit the grievance to ensure completion and enter the information, including the grievance code as assigned by the local grievance coordinator, into the grievance tracking database. Once the appropriate information is entered into the database, the grievance is assigned to a grievance investigator. . . .

> [After] [g]rievance decisions [are complete, they] are returned to clerical staff for processing including designation of a return date and final data entry. Copies of the grievance decision are sent to the warden and the grievant. A copy is retained in the Office of Legal Affairs.

(Stapleton Aff. ¶¶ 10, 12.) He also attests that a search in this database for all Step III grievances filed by Plaintiff has been conducted, and that the results were compared with file materials. (*Id.* ¶¶ 13, 14.) Defendants provide a copy of the database inquiry results which reflect that the Grievance and Appeals Section received only one Step III appeal from Plaintiff since he has been at JCF: JCF 2010-06-1475-01G. (*Id.* ¶ 15.) As noted, this grievance involves a $5.00 co-pay and is unrelated to the claims in this case.

Given the Grievance and Appeals Section's systematic tracking of Step III appeals, Stapleton's affidavit that a proper search of that system was conducted, and the absence of the JCF 1466 (Step III) grievance in the search results and files, Defendants have carried their initial summary judgment burden of demonstrating that Plaintiff never appealed the JCF 1466 grievance to Lansing. *See e.g.*, *Brittenham v. Caruso*, No. 09-14913, 2011 WL 767310, at *2 (E.D. Mich. Jan 14, 2011) *report adopted by* 2011 WL 767305 (Feb. 28, 2011) (dismissing case for failure to exhaust where defendants moved for summary judgment based on a similar Stapleton affidavit and plaintiff failed to file a summary judgment response).

In his verified Complaint, Plaintiff asserts that he filed the JCF 1466 grievance "on or about

11

5-26-10; then [the] second step on or about 6-15-10; and [the] third step on or about 7-5-2010."
(Compl. at 1.) Verified complaints can carry "the same weight as . . . an affidavit for the purposes
of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see also Lavado v.
Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Plaintiff's statement, however, is contradicted by his
own evidence. First, Plaintiff's copy of the Step I grievance form indicates it was completed on
June 1, 2010, and received by the Grievance Coordinator on June 2, 2010. (Pl.'s Resp. at 13.)
Neither of these dates correspond to the averred May 26, 2010, Step I filing date. (*Compare* Pl.'s
Resp. at 13 *with* Compl. at 1.) Regarding the alleged Step III filing date, on July 15, 2010, Plaintiff
completed a Step I grievance form regarding Defendant McMillan's failure to provide a Step III
appeal form for the JCF 1466 and JCF 1475 grievances.[6] (Compl. at 13.) The form provides an
incident date of July 7, 2010. It is implausible that Plaintiff filed his Step III appeal for the JCF
1466 grievance on July 5, 2010, when Plaintiff was still requesting a Step III appeal form for that
grievance as of July 7, 2010.[7] This inference is strengthened by the fact that the Step III response
was not due until July 7, 2010 (15 business days from the June 15, 2010, receipt of the Step II
appeal). Finally, Plaintiff has failed to produced a copy of his Step III appeal form in support of his
averment. *See Williams v. Piper*, No. 06-13941, 2007 WL 522646, at *2 (E.D. Mich. Feb. 14, 2007)
("Plaintiff has failed to show exhaustion of his administrative remedies. He must exhaust his
remedies on all three levels of the grievance process before filing this action. Plaintiff has not

---

[6]The grievance against McMillan is perplexing; the Step III form appears to be the same form used for a Step II appeal. (*E.g.*, Pl.'s Resp. at 15, 17.) Plaintiff had already filed a Step II appeal for the JCF 1466 grievance prior to his July 15, 2010, grievance about McMillan. Thus, it appears he already had the Step III form in his possession.

[7]I also note that July 5, 2010, was a federal holiday.

submitted a grievance form showing that he has exhausted his remedies at Step III of the grievance process."). Accordingly, Plaintiff's verified statement is insufficient to create a genuine issue of material fact. *Cf. Ryder v. Wolfenbarger*, No. 08-12115, 2010 WL 3259361, at *5 (E.D. Mich. June 24, 2010) *report adopted by* 2010 WL 3259358 (Aug. 18, 2010) (finding grievance unexhausted where plaintiff submitted affidavit stating that he "filed" a Step III appeal but produced a completed Step III appeal form that differed from defendants' version, and plaintiff admitted that he sent the Step III appeal form to the grievance coordinator (as opposed to Lansing)).

Plaintiff also asserts that an August 31, 2010, letter from Jessica Zimberlman of the Office of Legislative Corrections Ombudsman ("Ombudsman") evidences that he exhausted his grievances.[8] (*See* Pl.'s Resp. ¶ 7.) Because the Step II/III grievance appeal form states that an inmate may contact the Ombudsman if he "find[s] the Step III Director's response unsatisfactory," a letter indicating that Plaintiff contacted the Ombudsman regarding his medical treatment at JCF, when taken in the light most favorable to Plaintiff, could suggest that he filed a Step III appeal. The Ombudsman's response, however, does not state that it was associated with any grievance. Nor does it provide the date when Plaintiff contacted the office. Further, it remains that Plaintiff has not produced a completed Step III appeal form for the JCF 1466 grievance, let alone anything indicating the he sent such a form to Lansing—nor anything that suggests he received an unsatisfactory response. And, despite a systemic logging process, the Grievance and Appeal Section has no record of Plaintiff's Step III appeal. Further, Plaintiff's asserted Step I and Step III filing dates are not in

---

[8]In responding to Defendant Kinder's Motion for Summary Judgment, Plaintiff clarified that the Ombudsman letter evidences exhaustion of the JCF 1816 grievance. (Dkt. 23, Pl.'s Resp. to Kinder's Mot. ¶ 1.) However, granting *pro se* Plaintiff an indulgent reading of his Complaint and briefs, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court has considered the possibility that it also supports his claim that he exhausted the JCF 1466 grievance.

accord with the record.  Thus, taking the facts as a whole, the Ombudsman's letter does not create a genuine issue of material fact that Plaintiff exhausted the JCF 1466 grievance.  *Cf. Davis v. Caruso*, No. 07-11740, 2008 WL 4561659, at \*6-7 (E.D. Mich. Oct. 10, 2008) *report adopted in relevant part by* 2009 WL 878193 (Mar. 30, 2009) (finding grievance unexhausted where plaintiff produced a completed Step III appeal form but had no evidence demonstrating that he ever sent that form to Lansing or received a response, and the grievance was absent from the Step III tracking database).

## 2. Grievance Number JCF 10-07-01816-12D1 is Unexhausted

The Court should also find that Plaintiff failed to exhaust the JCF 1816 grievance filed against Defendant Jackson.  Plaintiff attached a completed Step III appeal form for the JCF 1816 grievance to his Response.  (Pl.'s Resp. at 15.)  Assuming that Plaintiff filed this form, it is plain that he did not do so until *after* filing suit on October 15, 2010: the form itself includes handwritten dates of November 1 and November 10, 2010 (corresponding to when the Step II appeal was "received" and "returned," respectively).  (*Id.*)  It is well-settled that completing the grievance process after filing suit does not satisfy the PLRA's exhaustion requirement.  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court . . . .  The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *see also Rhinehart v. Scutt*, No. 10-10006, 2011 WL 679699, at \*4 (E.D. Mich. Jan. 14, 2011) *report adopted by* 2011 WL 674736 (E.D. Mich. Feb. 16, 2011) (finding a pair of grievances unexhausted despite that the first was appealed through Step III and the second terminated favorably at Step II because "plaintiff's Step II and Step III appeals on the first grievance, and the filing of the second grievance, all occurred after he filed his complaint

14

in this action."); *Ross v. Duby*, No. 09-531, 2010 WL 3732234, at *1 (W.D. Mich. Sept. 17, 2010)

("Now that the MDOC has responded to Plaintiff's Step III grievance, Plaintiff's administrative

remedies have been exhausted.  Regardless, the Court must dismiss Plaintiff's claim, as Plaintiff

cannot perfect the exhaustion requirement during the pendency of his case.").[9],[10]

Plaintiff asserts that the Step I Grievance Coordinator, Defendant McMillan, delayed in

providing him a Step II appeal form for the JCF 1816 grievance, and thereby "block[ed] and

stop[ped]" exhaustion of that grievance.  (*See* Pl.'s Resp. ¶ 7; Compl. at 8, 10.)  Plaintiff received

the Step I response for JCF 1816 on August 4, 2010.  On August 17, 2010, Plaintiff wrote to Warden

Scutt about McMillan's failure to provide a Step II form despite two requests for the form.  (Compl.

at 10.)  A September 4, 2010, kite to McMillan again requested a Step II form for JCF 1816.

(Compl. at 8.)  Plaintiff ultimately filed his Step II appeal—on the appropriate form—on September

11, 2010.  Thus, Plaintiff received the forms sometime between September 4 and 11.  (Pl.'s Resp.

---

[9]The Sixth Circuit is not alone in applying this rule:
> We also recognize the holdings of many of our sister circuits that permitting exhaustion *pendente lite* undermines the objectives of section 1997e(a) and that the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur.

*Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003) (collecting cases from First, Second, Sixth, Seventh, Ninth, and D.C. Circuit Court of Appeals).

[10]In his Response to Defendant Kinder's Motion for Summary Judgment, Plaintiff has included grievance forms related to JCF-10-10-2363-12D4.  (Pl.'s Resp. to Kinder's Mot. at 12-14, 16.)  This grievance is arguably unrelated to this suit as it pertains to the denial of special accommodation for Thrombo Embolic Deterrent support hose for Plaintiff's legs.  To the extent that they relate to the swelling in Plaintiff's legs from his HCV infection, Plaintiff did not complete the Step I grievance form until October 17, 2010—after he filed this suit.  (Pl.'s Resp. to Kinder's Mot. at 12.)  Accordingly, it is unexhausted under the authorities just cited.

15

at 15.)  Accordingly, Plaintiff's evidence indicates that McMillan delayed his Step II appeal by about a month.

This delay does not alter the conclusion that the JCF 1816 grievance remains unexhausted, however.  The mere fact that forms were temporarily unavailable to Plaintiff is insufficient to establish exhaustion.  *See Martin v. Johnson*, 72 F. App'x 256, 258 (6th Cir. 2003) ("[Plaintiff] alleged only that he had requested a grievance form to file . . . [and] that he did not receive a form. This court has . . . held that such an allegation is insufficient to establish exhaustion." (citing *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001)); *Kennedy v. Wurth*, 36 F. App'x 553, 554 (6th Cir. 2002) ("[Plaintiff] does not allege that he appealed any of the grievances which were not answered, arguing instead that to do so is impossible because he would not have a grievance number or the proper form to file an appeal.  He did not show that he attempted to appeal without a form or by identifying his grievance by subject where no number had been assigned. . . .  [I]t is inadequate for a prisoner to allege that he was denied a form for a grievance . . . he must show that he attempted to file a grievance without the form."); *Peterson v. Cooper*, No. 09-224, 2010 WL 3720207, at *5 (W.D. Mich. July 28, 2010) *report adopted by* 2010 WL 3732229 (Sept. 17, 2010) ("In order to have a court determine that prison staff prevented a prisoner from exhausting a grievance, the prisoner must show that he made attempts to secure a grievance form, that there was no other source for the form, and that he attempted to file the grievance without a form."); *Hill v. Caruso*, No. 08-12472, 2009 WL 691680 at *6-7 (E.D. Mich. Mar. 12, 2009) (rejecting plaintiff's argument that exhaustion would have been "fruitless" because defendant failed to provide appeal forms in a timely fashion and, accordingly, appeals would have been rejected as untimely); *cf. Tuttle v. Boynton*, No. 08-113, 2009 WL 2134968, at *4 (W.D. Mich. Jul. 15, 2009) (finding grievance exhausted where grievance

16

coordinator denied plaintiff Step II appeal form despite a timely request, and, after time for Step II appeal passed, grievance coordinator informed plaintiff that his requests for the form "violated the five-day time limit," and never provided the prisoner the appeal form).

Given the foregoing authority, finding exhaustion of the JCF 1816 grievance would be inappropriate in this case. Here, Plaintiff received the requested form, and, more importantly, filed a Step II appeal. That appeal was not rejected as untimely—rather, Plaintiff received a Step II response on the merits. (Pl.'s Resp. at 15-16.) And, upon receiving that response, Plaintiff completed the Step III appeal form with the apparent intent of sending it to the Grievance and Appeals Section. In short, McMillan's conduct prevented neither the Step II appeal nor the exhaustion of the JCF 1816 grievance. It merely delayed those events by a month. *Cf. Tuttle*, 2009 WL 2134968, at *4.

Regarding the Ombudsman letter, the Court does not find that this exhausted JCF 1816—even considering the delay in receiving the Step II appeal forms. As an initial matter, there is no evidence to suggest that Plaintiff contacted the Ombudsman because McMillan denied him the Step II appeal forms in August. Given that the Ombudsman responded on August 31, 2010, it may be that Plaintiff contacted that office prior to requesting the Step II form. More importantly, contacting the Ombudsman is materially distinct from filing a Step II (and III) appeal on the wrong form which would suffice for exhaustion. *Cf. Peterson*, 2010 WL 3720207, at *5. Where a prisoner attempts to exhaust by filing a grievance on the wrong form, the prison and/or Grievance and Appeals Section still have an opportunity to remedy the complaint on its merits before suit is filed. In contrast, Plaintiff's letter to the Ombudsman—which is not a step contemplated by the Policy Directive—provided no opportunity for the Step II or III appeal respondents to remedy Plaintiff's

grievance.  *See Woodford v. Ngo*, 548 U.S. 81, 94 (2002) ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  Accordingly, this case is distinguishable from those finding a prisoner's efforts to exhaust sufficient where the prison made administrative remedies unavailable. Again, this is underscored by the fact that the grievance process for JCF 1816 ultimately worked for Plaintiff: he received the Step II appeal form and filed a Step II appeal.  The Court should find that Plaintiff failed to exhaust the JCF 1816 grievance before he filed suit.

### 3.  Plaintiff's Grievance Against Defendant McMillan is Unexhausted

Whether Plaintiff exhausted his grievance against Defendant McMillan need not detain the Court for great length.  First, Plaintiff's Step I form lacks both a grievance number and a "received" date—this strongly indicates that he never filed his grievance against Defendant McMillan at all. Second, nothing suggests that Plaintiff ever completed a Step II, let alone a Step III, appeal form. Finally, the grievance tracking database contains no record of this grievance.  Thus, the record is undisputed that the grievance against Defendant McMillan, if ever commenced, is unexhausted.[11]

---

[11]The Policy Directive demands that Plaintiff "name[] those whom the grievance is asserted against."  (Def.'s Mot. Summ. J., Ex. A-1 ¶ R.)  Here, JCF 1466 asserts that "doctors or medical staff continue to refuse me proper care."  (Pl.'s Resp. at 13.)  This may satisfy the Policy Directive's naming requirement as to some Defendants.  *See Hall v. Raja*, No. 09-10933, 2010 WL 1258204, at *4 (E.D. Mich. Mar. 30, 2010) ("[T]he Sixth Circuit does not require rigid compliance with the prison's grievance policy if the description in the grievance allows prison officials to identify who is being grieved.").  Even assuming this is so, neither the JCF 1466 grievance nor the JCF 1816 grievance refer to Defendants McMillan or Scutt—a grievance coordinator and warden are not "medical staff."  Accordingly, assuming that either JCF 1466 or JCF 1816 is exhausted, the Court should nonetheless dismiss Defendants McMillan and Scutt.

### C.  The Exhaustion Defense Applies to All Defendants

Although exhaustion is an affirmative defense that must typically be raised by a defendant,[12] *see Jones*, 549 U.S. at 215-17, on the facts of this case it applies with equal force to those that have yet to answer or file a motion (Defendants Prison Health Services, Cohen, Jackson, and Neff) and those who are unserved (Stevenson, Jane and John Doe).  None of the forgoing analysis is unique to any Defendant.  Defendants Creger, Hunter, McMillan, Scutt, and Kinder have raised the affirmative defense of exhaustion, and Plaintiff has had two separate opportunities to produce evidence demonstrating that he exhausted the grievances related to this suit.  (Dkts. 16, 23.)  He has failed to do so.  Under these circumstances, it would be futile and an uneconomical use of judicial resources to conduct further proceedings against the non-moving and unserved Defendants.  *See Monk v. Bailey*, No. 1:08-cv-903, 2010 WL 4962960, at *4 (W.D. Mich. Oct. 28, 2010) *report adopted by* 2010 WL 4963013 (W.D. Mich. Dec. 1, 2010) (dismissing six unserved "Doe" defendants who allegedly denied plaintiff medical treatment where plaintiff could not establish exhaustion as to any prison personnel); *see also Moore v. Thomas*, 653 F. Supp. 2d 984, 1003 (N.D. Cal. 2009) ("Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues."); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007)

---

[12]Although the Supreme Court in *Jones* held that exhaustion is an affirmative defense, it also made clear that where  it is plain on the face of the complaint that a grievance is unexhausted, a court may still raise that issue *sua sponte*.  *See* 549 U.S. at 214-15; *Spaulding v. Oakland Co. Jail Medical Staff*, No. 07-12727, 2007 WL 2336216, at *3 (E.D. Mich. Aug. 15, 2007) (holding, where it was clear from the face of the complaint that the plaintiff failed to properly exhaust, the plaintiff's complaint was subject to *sua sponte* dismissal for failure to state a claim).

(concluding that successful affirmative defense of lack of exhaustion raised by defendants who were served in a prisoner civil rights case also "inure[d] to the benefit of any unserved or defaulting defendants"); *cf. Laubach v. Scibana*, No. Civ-05-1294-F, 2008 WL 281545 at *12 (W.D. Okla. Jan. 31, 2008) (holding that affirmative defenses asserted by served defendants, including exhaustion, were "equally applicable to the claims against the unresponsive and unserved defendants," and dismissing complaint as to unserved defendants for failure to state a claim upon which relief may be granted).

## III.  RECOMMENDATION

For the foregoing reasons, the Court should GRANT Defendants Debra Scutt, Michelle Creger, Joyce Hunter, and Larry McMillan's Motion for Summary Judgment (Dkt. 13), and Defendant Laura Kinder's Motion for Summary Judgment (Dkt. 18), and DISMISS Plaintiff's Complaint WITHOUT PREJUDICE.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (remanding to the district court to dismiss suit without prejudice where inmate failed to exhaust under 42 U.S.C. § 1997e(a)); *Lawson v. Holmes*, No. 1:09-CV-551, 2010 WL 2640419, at *6 (W.D. Mich. June 2, 2010) (noting that dismissal with prejudice for failure to exhaust was arguably justified because the prison would likely deem any subsequent grievance untimely, but ultimately dismissing without prejudice because "the court should not anticipate a future event[]").

## IV.  FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States*

*v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).



                                        s/Laurie J. Michelson_____
                                         LAURIE J. MICHELSON
                                         UNITED STATES MAGISTRATE JUDGE

Dated:  March 28, 2011

                              CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 28, 2011.


                                        s/Susan Jefferson_____
                                        Deputy Clerk

Mailed to:

Michael Dean
#204653
2500 N. Elm Road
Jackson, MI 49201